# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| FIRST FRANKLIN FINANCIAL CORPORATION, a Delaware corporation, <br><br> Plaintiff, <br><br> v. <br><br> AMERIHOME MORTGAGE COMPANY, L.L.C., A Wisconsin limited liability company, <br><br> Defendant. | Case No. 08 C 1089 <br><br> Hon. Charles P. Kocoras |

## ANSWER AND AFFIRMATIVE DEFENSES
## TO PLAINTIFF'S COMPLAINT

NOW COMES the Defendant, AMERIHOME MORTGAGE COMPANY, L.L.C, by and through its attorneys, LEWIS BRISBOIS BISGAARD & SMITH, LLP, and for its **ANSWER** to Plaintiff's Complaint states as follows:

### PARTIES, JURISDICTION, AND VENUE

1.  First Franklin Financial Corporation ("First Franklin") is a Delaware corporation, with its principal place of business in the State of California.

**ANSWER**: **Defendant lacks information sufficient to form an opinion as to the truth or falsity of the allegations contained in paragraph 1. It, therefore, neither admits nor denies the same.**

2.  Defendant, Amerihome Mortgage Company, L.L.C. ("Defendant") is a Wisconsin limited liability company that transacts business as a mortgage broker in the State of Illinois. The members of Defendant are: (a) Peter E. Georgitais, an individual citizen of Illinois residing in Rosemont, Illinois; (b) Nicholas J. Deltorto, an individual citizen of Wisconsin residing in

Brookfield, Wisconsin; and (c) Kerry A. Pastore, an individual citizen of Illinois residing in Rosemont, Illinois.

**ANSWER**:    **Defendant admits that Amerihome Mortgage Company, LLC, is a Wisconsin limited liability company that transacts business as a mortgage broker in the State of Illinois. Defendant admits that its members are Mr. Georgitais, Mr. Deltoro, and Ms. Pastore, and admits the citizenship as alleged for those individuals, but denies each alleged city of residency for the members of Defendant, as the same allegations are not true.**

3.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

**ANSWER**:    **Defendant admits the factual allegations contained in paragraph 3, and admits that subject matter jurisdiction is proper in this court.**

4.    This Court has personal jurisdiction over Defendant because Defendant transacts business in the City of Rosemont in the State of Illinois and the acts complained of herein occurred in the State of Illinois. Furthermore, two of the individual members of the Defendant LLC are residents and citizens of the State of Illinois.

**ANSWER**:    **Defendant admits that it transacts business in the State of Illinois and therefore admits that this Court has personal jurisdiction over it.**

5.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a)(1) and (2) because two of the individual members of the Defendant LLC reside in this District and a substantial part of the events giving rise to Plaintiff's claims occurred within this District.

**ANSWER**:    Defendant admits that a substantial part of the events giving rise to Plaintiff's claims occurred within this District, and that Venue in this District is accordingly consistent with 28 U.S.C. § 1391(a)(1) and (2).

## BREACH OF CONTRACT

6.    On or around May 24, 2004, First Franklin and Defendant entered into a contract pursuant to which Defendant became an independent contractor of First Franklin authorized to submit applications for loans to be secured by a first or junior lien on residential real property and to be funded by First Franklin (the "Loans").

**ANSWER**:    **Defendant states that prior to, on, and after May 24, 2004, it was engaged in an ongoing business relationship with Plaintiff, that on or about May 24, 2004 Defendant signed but Plaintiff did not sign a document titled "Mortgage Broker Agreement." Defendant objects to and does not answer the legal conclusions set forth in Paragraph 6. Defendant denies any characterization of the "Mortgage Broker Agreement" that is inconsistent with the business practices of the parties, the ongoing course of dealing between the parties, the language of the document itself, the parties' instructions and communications as to particular loans, and that fact that the document was not signed by Plaintiff.    Defendant denies the remaining allegations of Paragraph 6.**

7.    The contract between First Franklin and Defendant is evidenced by a written "Mortgage Broker Agreement," a copy of which is in the possession of Defendant and is incorporated by reference herein.

**ANSWER**:    **Defendant states that prior to, on, and after May 24, 2004, it was engaged in an ongoing business relationship with Plaintiff, that on or about May 24, 2004 Defendant**

**signed but Plaintiff did not sign a document titled "Mortgage Broker Agreement." Defendant objects to and does not answer the legal conclusions set forth in Paragraph 7.**

8.   Under the terms of the Mortgage Broker Agreement, Defendant represented and warranted to First Franklin that as of the date a Loan is closed and funded by First Franklin, all information relating to Borrower's creditworthiness and collateral submitted in connection with an application for a Loan is true, accurate, and complete. Paragraph 3.01(b) of the Mortgage Broker Agreement.

**ANSWER**:   **Defendant states that the language of the "Mortgage Broker Agreement" speaks for itself, and therefore no further answer is required.**

9.   Under the terms of the Mortgage Broker Agreement, Defendant agreed to and was compensated for investigating the accuracy and completeness of the Borrower's information and analyzing the Borrower's income. Schedule A to the Mortgage Broker Agreement.

**ANSWER**:   **Defendant denies the allegations contained in paragraph 9.**

10.   Under the terms of the Mortgage Broker Agreement, Defendant provided and represented that it had provided the goods and services listed on Schedule A to the Mortgage Broker Agreement for any Loan for which it received compensation from First Franklin. Paragraph 3.01(e) of the Mortgage Broker Agreement.

**ANSWER**:   **Defendant denies the allegations contained in paragraph 10.**

11.   Under the terms of the Mortgage Broker Agreement, Defendant agreed to indemnify and hold First Franklin harmless from and against any and against all damage, loss, liability, cost, or expense, both direct and indirect (including without limitation reasonable legal and accounting fees and expenses actually incurred), which may arise or be incurred as a result of any action or inaction by Defendant, including, but not limited to, a breach of any covenant, condition, representation or

warranty arising under the Mortgage Broker Agreement. Paragraph 2.02(a) of the Mortgage Broker Agreement.

**ANSWER**:    **Defendant denies the allegations contained in paragraph 11**.

12.    On or about April 27, 2006, Defendant submitted a final loan application on behalf of Angel T. Burgos (the "Burgos Application") to obtain a loan in the amount of $192,000 plus interest (the "Burgos Loan") from First Franklin. The Burgos Loan was to be secured by a property located at 4528 South Lamon Avenue, Chicago, Illinois (the "South Lamon Property").

**ANSWER**:    **Defendant affirmatively states that its file does not contain a loan application on behalf of Angel T. Burgos dated on or about April 27, 2006. Defendant admits that it has a copy of an unsigned or draft loan application pertaining to Mr. Burgos and to the property at 4528 South Lamon Avenue, Chicago, Illinois and a loan in the amount of $192,000. Defendant admits that information pertaining to the Burgos application was exchanged with First Franklin, but denies any remaining allegations of Paragraph 12.**

13.    The Burgos Application stated that Burgos owned and occupied property located at 1904 Kedvale, Chicago that he would rent to a third party and that he would occupy the South Lamon Property as his primary residence for one year.

**ANSWER**:    **Defendant admits the that the unsigned or draft application contained in its file indicates the borrower's intention to reside at the subject property but not any intention to rent 1904 Kedvale to a third party. Defendant otherwise denies the allegations contained in paragraph 13**.

14.    The Burgos Application also stated that Burgos worked in the Auditing Department at Sam's Club and earned $6,100 per month.

**ANSWER**: **Defendant admits the that the unsigned or draft application contained in its file is consistent with the allegations contained in paragraph 14. Defendant otherwise denies the allegations contained in paragraph 14**.

15. First Franklin funded the Burgos Loan on or about April 26, 2006 in the amount of $192,000 based upon Defendant's representations that the Burgos Loan was of suitable investment quality and did not contain any false or erroneous representations.

**ANSWER**: **Defendant denies that First Franklin relied on any representation made on April 27, 2006 in issuing a loan on April 26, 2006. Defendant further denies that it made representations at any time that the Burgos Loan was of suitable investment quality and did not contain any false or erroneous representations, and therefore denies that First Franklin took any action based upon Defendant's representations. Defendant lacks knowledge or information sufficient to form a belief as to the remaining allegations contained in paragraph 15, and therefore, neither admits nor denies the same.**

16. Burgos filed bankruptcy on January 24, 2007. In pleadings filed in the bankruptcy proceeding, Burgos stated that he resided at 1904 Kedvale and that he had not resided at any other address in the prior three years. Burgos' bankruptcy pleadings identified the South Lamon Property as a rental property.

**ANSWER:** **Defendant lacks knowledge or information sufficient to form a belief as to the allegations contained in paragraph 16, and therefore, neither admits nor denies the same.**

17. Burgos' bankruptcy pleadings also indicated that he was employed at Sam's Club for three years as "audit" and that he earned $1,649.95 per month. Burgos' bankruptcy pleadings also stated that he earned $1,551 per month during 2006 and annual income of $18,261 for 2005 ($1,522 per month).

**ANSWER**:    **Defendant lacks knowledge or information sufficient to form a belief as to the allegations contained in paragraph 17, and therefore, neither admits nor denies the same.**

18.    As a result of the misrepresentations in the Burgos Application, First Franklin's secondary market investor required First Franklin to repurchase the Burgos Loan, which it did.

**ANSWER**:    **Defendant lacks knowledge or information sufficient to form a belief as to the allegations contained in paragraph 18, and therefore, neither admits nor denies the same.**

19.    After repurchasing the Burgos Loan, First Franklin was able to mitigate part of its damages by reselling the loan. Despite its efforts to mitigate its damages, First Franklin incurred an actual loss of $88,233.27.

**ANSWER**:    **Defendant lacks knowledge or information sufficient to form a belief as to the allegations contained in paragraph 19, and therefore, neither admits nor denies the same.**

20.    Pursuant to the terms of the Mortgage Broker Agreement, First Franklin requested that Defendant indemnify First Franklin for its actual loss of $88,233.27. Defendant refused to indemnify First Franklin for this loss.

**ANSWER**:    **Defendant admits that First Franklin has requested that Defendant pay it $88,233.27 as claimed indemnification for actual loss resulting from the Burgos Loan default. Defendant admits that it refused to pay First Franklin's demands, as the same were and are unwarranted. Defendant denies the remaining allegations and legal conclusions contained in paragraph 20.**

21.    Defendant breached the terms of the Mortgage Broker Agreement when, among other things: (i) Defendant submitted the Borgos Application to First Franklin, which contained false and inaccurate information regarding Burgos' creditworthiness and (ii) Defendant refused to indemnify

First Franklin for the actual loss of $88,233.27 that First Franklin incurred as a result of Defendant's actions and inactions, including its breaches of the representations and warranties under the Mortgage Broker Agreement.

**ANSWER**: **Defendant denies the allegations and legal conclusions contained in paragraph 21.**

22.     On or about March 9, 2006, First Franklin funded two loans in the principal amounts of $904,000 and $226,000 respectively, which named Bozidar Kelic ("Kelic") as the borrower, with said loans (the "Kelic Loans") secured against property located at 3134 Gordon Lane, Lemont, Illinois (the "Gordon Lane Property").

**ANSWER**:    **Defendant denies the allegations contained in paragraph 22. Defendant states, however, that First Franklin apparently funded loans to Kelic secured against property located at 1334 Gordon Lane, Lemont, Illinois.**

23.     Defendant submitted a loan application to First Franklin for the Kelic Loan (the "Kelic Application") which listed Kelic's employer as a company whose existence cannot be verified, which contained false information, and in which Kelic declared that he would occupy the Gordon Lane Property within sixty days of funding and would continue occupying the Gordon Lane Property for one year. First Franklin subsequently determined that the Lemont Property was vacant.

**ANSWER**:    **Defendant admits that loan applications by Kelic in its file pertaining to the property at 1334 Gordon Ln., Lemont, IL list Mr. Kelic as self employed at BPK Limo Service. Defendant affirmatively states that the existence of BBK Limo Service was verified by Amerihome, and denies any allegation to the contrary. Defendant admits that the loan applications in its file indicate that Kelic intended to occupy the property at 1334 Gordon Ln. as his primary residence. Defendant lacks knowledge or information sufficient to form a**

**belief as to the remaining allegations contained in paragraph 23, and therefore, neither admits nor denies the same**.

24.   As a result of the misrepresentations in the Kelic Application, First Franklin's secondary market investor required First Franklin to repurchase the Kelic Loans, which it did.

**ANSWER**:   **Defendant lacks knowledge or information sufficient to form a belief as to the allegations contained in paragraph 24, and therefore, neither admits nor denies the same.**

25.   After repurchasing the Kelic Loans, First Franklin was able to mitigate part of its damages by selling the Gordon Lane Property in a foreclosure sale.  Despite its efforts to mitigate its damages, First Franklin incurred an actual loss of $200,127.52 with respect to the Kelic Loan.

**ANSWER**:   **Defendant lacks knowledge or information sufficient to form a belief as to the allegations contained in paragraph 25, and therefore, neither admits nor denies the same.**

26.   Pursuant to the terms of the Mortgage Broker Agreement, First Franklin requested that Defendant indemnify First Franklin for its actual loss of $200,127.52.  Defendant refused to indemnify First Franklin for this loss.

**ANSWER**:   **Defendant admits that First Franklin has requested that Defendant pay it $200,127.52 as claimed indemnification for actual loss resulting from the Kelic default. Defendant admits that it refused to pay First Franklin's demands, as the same were and are unwarranted. Defendant denies the remaining allegations and legal conclusions contained in paragraph 26.**

27.   Defendant breached the terms of the Mortgage Broker Agreement when, among other things: (i) Defendant submitted the Kelic Application to First Franklin, which contained false and inaccurate information regarding Kelic's creditworthiness and (ii) Defendant refused to indemnify First Franklin for the actual loss of $200,127.52 First Franklin incurred as a result of Defendant's

actions and inactions, including its breaches of the representations and warranties under the Mortgage Broker Agreement.

**ANSWER**:   **Defendant denies the allegations and legal conclusions contained in paragraph 27.**

28.   As a result of Defendant's actions and inaction, and its breaches of the Mortgage Broker Agreement, First Franklin has suffered damages in the amount of $288,360.79, plus attorney fees, additional interest, and costs.

**ANSWER**:   **Defendant denies the allegations and legal conclusions contained in paragraph 28.**

## INDEMNIFICATION

29.   First Franklin Financial Corporation incorporates paragraphs 1 through 29 of its Complaint as though fully set forth herein.

**ANSWER**:   **Defendant restates its answers to paragraphs 1 through 29 as if fully set forth herein.**

30.   Pursuant to the terms of the Mortgage Broker Agreement, Defendant agreed to indemnify and hold First Franklin harmless from and against any and against all damage, loss, liability, cost, or expense, both direct and indirect (including without limitation reasonable legal and accounting fees and expenses actually incurred), which may arise or be incurred as a result of any action or inaction by Defendant, including, but not limited to, a breach of any covenant, condition, representation or warranty arising under the Mortgage Broker Agreement.  Paragraph 2.02(a) of the Mortgage Broker Agreement.

**ANSWER**: **Defendant states that prior to, on, and after May 24, 2004, it was engaged in an ongoing business relationship with Plaintiff, that on or about May 24, 2004 Defendant signed but Plaintiff did not sign a document titled "Mortgage Broker Agreement," a document which speaks for itself. Defendant objects to and does not answer the legal conclusions set forth in Paragraph 30. Defendant denies any characterization of the "Mortgage Broker Agreement" that is inconsistent with the business practices of the parties, the ongoing course of dealing between the parties, the language of the document itself, the parties' instructions and communications as to particular loans, and that fact that the document was not signed by Plaintiff. Defendant denies the remaining allegations of Paragraph 30.**

31. As described throughout this Complaint, Defendant made material misrepresentations to First Franklin about the Burgos and Kelic Loans, as a result of which First Franklin suffered actual losses in an amount not less than $288,360.79, plus attorney fees, additional interest, and costs.

**ANSWER**: **Defendant denies the allegations and legal conclusions contained in paragraph 31.**

32. Pursuant to Paragraph 2.02(a) of the Mortgage Broker Agreement, Defendant must indemnify First Franklin for its actual losses in an amount not less than $288,360.79, plus attorney fees, additional interest, and costs.

**ANSWER**: **Defendant denies the allegations and legal conclusions contained in paragraph 32.**

WHEREFORE, Defendant, AMERIHOME MORTGAGE COMPANY, L.L.C., denies that plaintiff is entitled to judgment against it in any amount whatsoever, and prays that judgment be


**ANSWER**: **Defendant states that prior to, on, and after May 24, 2004, it was engaged in an ongoing business relationship with Plaintiff, that on or about May 24, 2004 Defendant signed but Plaintiff did not sign a document titled "Mortgage Broker Agreement," a document which speaks for itself. Defendant objects to and does not answer the legal conclusions set forth in Paragraph 30. Defendant denies any characterization of the "Mortgage Broker Agreement" that is inconsistent with the business practices of the parties, the ongoing course of dealing between the parties, the language of the document itself, the parties' instructions and communications as to particular loans, and that fact that the document was not signed by Plaintiff. Defendant denies the remaining allegations of Paragraph 30.**

31. As described throughout this Complaint, Defendant made material misrepresentations to First Franklin about the Burgos and Kelic Loans, as a result of which First Franklin suffered actual losses in an amount not less than $288,360.79, plus attorney fees, additional interest, and costs.

**ANSWER**: **Defendant denies the allegations and legal conclusions contained in paragraph 31.**

32. Pursuant to Paragraph 2.02(a) of the Mortgage Broker Agreement, Defendant must indemnify First Franklin for its actual losses in an amount not less than $288,360.79, plus attorney fees, additional interest, and costs.

**ANSWER**: **Defendant denies the allegations and legal conclusions contained in paragraph 32.**

WHEREFORE, Defendant, AMERIHOME MORTGAGE COMPANY, L.L.C., denies that plaintiff is entitled to judgment against it in any amount whatsoever, and prays that judgment be

entered on behalf of Defendant, AMERIHOME MORTGAGE COMPANY, L.L.C., and for such other and further relief as the this Court deems just and equitable.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense - Waiver

NOW COMES the Defendant, AMERIHOME MORTGAGE COMPANY, L.L.C. ("AMERIHOME"), by and through its attorneys, LEWIS BRISBOIS BISGAARD & SMITH, LLP, and for its First Affirmative Defense to Plaintiff's Complaint, states as follows:

1. In paragraph 8 of plaintiff's complaint, plaintiff alleges that under "the terms of the Mortgage Broker Agreement, Defendant represented and warranted to First Franklin that as of the date a Loan is closed and funded by First Franklin, all information relating to Borrower's creditworthiness and collateral submitted in connection with an application for a Loan is true, accurate, and complete.  Paragraph 3.01(b) of the Mortgage Broker Agreement."

2. In paragraphs 9 of plaintiff's complaint, plaintiff alleges that "under the terms of the Mortgage Broker Agreement, Defendant agreed to and was compensated for investigating the accuracy and completeness of the Borrower's information and analyzing the Borrower's income. Schedule A to the Mortgage Broker Agreement."

3. Pursuant to the parties' course of dealing and conduct in closing these and similar loans, First Franklin directed and understood that Amerihome would not verify information in the applications, including the applicants' income as to "Stated NIV", "Stated Income" or "NIV" loans.

4. The terms "Stated NIV", "Stated Income", and "NIV" each mean that the loan would be underwritten based on the borrower's stated income without any income verification.

5. In consequence of First Franklin's instructions as to the handling of  "Stated NIV", "Stated Income", and "NIV" loans in general and of the Burgos and Kelic loans in particular, First

Franklin has waived any right to assert a duty to verify information submitted by the borrower, and has waived any claim to compliance with the terms of Schedule A that would be contrary to First Franklin's own instructions, definitions, and loan policies.

WHEREFORE, Defendant respectfully prays that all claims against it be dismissed, with prejudice, with a grant of such further and other relief to Defendant as may be warranted under the circumstances.

## Second Affirmative Defense - Estoppel

NOW COMES the Defendant, AMERIHOME MORTGAGE COMPANY, L.L.C. ("AMERIHOME"), by and through its attorneys, LEWIS BRISBOIS BISGAARD & SMITH, LLP, and for its Second Affirmative Defense to Plaintiff's Complaint, states as follows:

2. In paragraph 8 of plaintiff's complaint, plaintiff alleges that under "the terms of the Mortgage Broker Agreement, Defendant represented and warranted to First Franklin that as of the date a Loan is closed and funded by First Franklin, all information relating to Borrower's creditworthiness and collateral submitted in connection with an application for a Loan is true, accurate, and complete. Paragraph 3.01(b) of the Mortgage Broker Agreement."

2. In paragraphs 9 of plaintiff's complaint, plaintiff alleges that "under the terms of the Mortgage Broker Agreement, Defendant agreed to and was compensated for investigating the accuracy and completeness of the Borrower's information and analyzing the Borrower's income. Schedule A to the Mortgage Broker Agreement."

3. Pursuant to the parties' course of dealing and conduct in closing these and similar loans, First Franklin directed and understood that Amerihome would not verify information in the applications, including the applicants' income as to "Stated NIV", "Stated Income" or "NIV" loans.

4.      The terms "Stated NIV", "Stated Income", and "NIV" each mean that the loan would be underwritten based on the borrower's stated income without any income verification.

5.      In justifiable reliance on First Franklin's instructions as to the handling of "Stated NIV", "Stated Income", and "NIV" loans in general and of the Burgos and Kelic loans in particular, Defendant accepted the borrower's stated income without any income verification, providing the information directed by First Franklin and foregoing additional investigations that were directed by First Franklin either to be foregone or to be entrusted to First Franklin.

6.      In consequence of First Franklin's instructions and Defendant's justifiable reliance on the same, which materially altered Defendant's position, First Franklin is and should be estopped from now claiming that Defendant was or is obligated to have acted contrary to First Franklin's instructions.

WHEREFORE, Defendant respectfully prays that all claims against it be dismissed, with prejudice, with a grant of such further and other relief to Defendant as may be warranted under the circumstances.

### Third Affirmative Defense – Contractual Modification

NOW COMES the Defendant, AMERIHOME MORTGAGE COMPANY, L.L.C. ("AMERIHOME"), by and through its attorneys, LEWIS BRISBOIS BISGAARD & SMITH, LLP, and for its Third Affirmative Defense to Plaintiff's Complaint, states as follows:

1.      Pursuant to the parties' course of dealing and conduct in closing these and similar loans, First Franklin directed and understood that Amerihome would not verify the applicants' income as to "Stated NIV" loans.

2. The term "Stated NIV" means that the loan would be underwritten based on the borrowers stated income without any income verification.

3. The terms of the Mortgage Broker Agreement between Plaintiff and Defendant have been clarified, modified and/or waived by the written and oral communications between First Franklin and Amerihome and the course of conduct of the parties involving Stated NIV loans.

WHEREFORE, Defendant respectfully prays that all claims against it be dismissed, with prejudice, with a grant of such further and other relief to Defendant as may be warranted under the circumstances.

### Fourth Affirmative Defense – Unconscionability

NOW COMES the Defendant, AMERIHOME MORTGAGE COMPANY, L.L.C. ("AMERIHOME"), by and through its attorneys, LEWIS BRISBOIS BISGAARD & SMITH, LLP, and for its Fourth Affirmative Defense to Plaintiff's Complaint, states as follows:

1. The Mortgage Broker Agreement is an unconscionable adhesion contract in that Amerihome was encouraged to market and offer First Franklin products based on oral instructions and representations, including the instruction as to how to handle "Stated NIV", "Stated Income", and "NIV" loans only thereafter being presented with the agreement for signature at closing, once the parties were financially committed to use First Franklin's services.

2. If and to the extent that First Franklin intended that its contract be read as requiring Defendant to have done work that First Franklin itself had instructed not be done, then the agreement was and is unconscionable.

3. The terms of the Mortgage Broker Agreement are unenforceable as an Adhesion Contract.

WHEREFORE, Defendant respectfully prays that all claims against it be dismissed, with prejudice, with a grant of such further and other relief to Defendant as may be warranted under the circumstances.

### Fifth Affirmative Defense

NOW COMES the Defendant, AMERIHOME MORTGAGE COMPANY, L.L.C. ("AMERIHOME"), by and through its attorneys, LEWIS BRISBOIS BISGAARD & SMITH, LLP, and for its Sixth Affirmative Defense to Plaintiff's Complaint, states as follows:

1. The Mortgage Broker Agreement is an unconscionable adhesion contract in that Amerihome was encouraged to market and offer First Franklin products based on oral instructions and representations, including the instruction as to how to handle "Stated NIV", "Stated Income", and "NIV" loans only thereafter being presented with the agreement for signature at closing, once the parties were financially committed to use First Franklin's services.

2. If and to the extent that First Franklin intended that its contract be read as requiring Defendant to have done work that First Franklin itself had instructed not be done, then the agreement was and is unconscionable.

3. The plaintiff required Defendant to sign the Mortgage Broker Agreement under economic duress.

### Sixth Affirmative Defense

NOW COMES the Defendant, AMERIHOME MORTGAGE COMPANY, L.L.C. ("AMERIHOME"), by and through its attorneys, LEWIS BRISBOIS BISGAARD & SMITH, LLP, and for its Seventh Affirmative Defense to Plaintiff's Complaint, states as follows:

1.      The Mortgage Broker Agreement is not enforceable because it was not executed by First Franklin, despite such acceptance being required, by the terms of the agreement.

                Respectfully submitted,

                AMERIHOME MORTGAGE COMPANY, L.L.C.

                By:       s/ Siobhán M. Murphy
                              One of Its Attorneys

Linda E. Unger – ARDC No. 3125563
Brooke M. Rotstein – ARDC No. 6282803
**LEWIS BRISBOIS BISGAARD & SMITH LLP**
550 West Adams Street, Suite 300
Chicago, Illinois  60661
Phone: 312-345-1718
Fax: 312-345-1778