**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| FIRST FRANKLIN FINANCIAL CORPORATION, a Delaware corporation,<br><br>Plaintiff,<br>vs.<br><br>AMERIHOME MORTGAGE COMPANY, L.L.C. a Wisconsin limited liability company,<br><br>Defendant. | ) | Case No. 08-C-1089<br><br>Hon. Charles P. Kocoras |

# RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiff First Franklin Financial Corporation ("Plaintiff" or "First Franklin"), through its attorneys Clark Hill, states as follows for its response in opposition to Defendant Amerihome Mortgage Company, LLC's Motion to Dismiss (the "Motion"):

## I. INTRODUCTION

Defendant Amerihome Mortgage Company, L.L.C.'s Motion to dismiss is based upon Fed. R. Civ. P. 12(b)(6), *i.e.,* which examines the pleadings to determine whether the plaintiff has failed to state a claim upon which relief can be granted. Although not clear, Defendant's Motion is actually a *partial* Motion to dismiss, because Defendant is *only* seeking dismissal of Count II of First Franklin's Complaint, namely contractual Indemnification. In support of its Motion, and presumably to distract this Court from the legal and factual claims made in the Complaint itself, Defendant makes a number of *unsupported* arguments that extend beyond the Complaint—*e.g.,* that First Franklin's loss is the result of a down-turn in the residential real estate market and that the course of dealings between the parties modified the terms of the agreement between them—all of which mischaracterize the nature of First Franklin's Complaint.

As an initial matter and in response to Defendant's claim that First Franklin never executed the Mortgage Broker Agreement, First Franklin attaches a copy of the *fully-executed* Mortgage Broker Agreement as attached as Exhibit 1.[1] More importantly, First Franklin has properly and specifically pleaded (and the Mortgage Broker Agreement, itself, supports) that Defendant agreed to indemnify First Franklin for losses incurred (and continues to incur) when First Franklin was required to repurchase two loans from its secondary market investors as a result of Defendant's submission of two loan applications to First Franklin that contained false information about the applicants. This is the precise situation that is contemplated by Paragraph 2.02 of the Mortgage Broker Agreement. Contrary to Defendant's claim, Paragraph 2.02 of the Mortgage Broker Agreement does not provide that the losses incurred by First Franklin must be caused by a "suit brought against First Franklin as a result of Defendant's actions." See Defendant's motion, p. 4. To be clear, Defendant warranted that all of the information contained with the loan application was true, and First Franklin repurchased both loans because of these misrepresentations, not as the result of the economic downturn in the real estate market.

Having mitigated its damages, First Franklin brought suit against Defendant seeking indemnification for the loss incurred as a result of the Defendant's breaches of the terms of the Mortgage Broker Agreement. The Complaint clearly and plainly states the facts upon which First Franklin's indemnification claim is based, and when viewed in the light most favorable to First Franklin, the claim is plausible on its face. Defendant's devotion of the majority of its argument to the interpretation of the indemnification provision of the Mortgage Broker Agreement supports no other conclusion.

---

1 Defendant claims that it only has a copy of the Mortgage Broker Agreement signed by its representative and not by a representative of First Franklin. But, as reflected in Exhibit 1, First Franklin did execute the Mortgage Broker Agreement.

## I. FACTUAL BACKGROUND AS PLEADED IN THE COMPLAINT

### A. THE MORTGAGE BROKER AGREEMENT

On or around May 24, 2004, First Franklin and Defendant entered into a contract pursuant to which Defendant became an independent contractor of First Franklin authorized to submit applications for loans to be secured by a first or junior lien on residential real property and to be funded by First Franklin (the "Loans"). Complaint at ¶6. The contract between First Franklin and Defendant is evidenced by a written "Mortgage Broker Agreement." Complaint at ¶7. Both First Franklin and Defendant executed the Mortgage Broker Agreement, a fully executed copy of which is attached to this Response as Exhibit 1. Under the terms of the Mortgage Broker Agreement, Defendant represented and warranted to First Franklin that as of the date a Loan is closed and funded by First Franklin, all information relating to Borrower's creditworthiness and collateral submitted in connection with an application for a Loan is true, accurate, and complete. Complaint at ¶8 and Paragraph 3.01(b) of the Mortgage Broker Agreement. Defendant agreed to and was compensated for investigating the accuracy and completeness of the Borrower's information and analyzing the Borrower's income. Complaint at ¶9 and Schedule A to the Mortgage Broker Agreement.

Under the terms of the Mortgage Broker Agreement, Defendant agreed to indemnify and hold First Franklin harmless from and against any and against all damage, loss, liability, cost, or expense, both direct and indirect (including without limitation reasonable legal and accounting fees and expenses actually incurred), which may arise or be incurred as a result of any action or inaction by Defendant, including, but not limited to, a breach of any covenant, condition, representation or warranty arising under the Mortgage Broker Agreement. Complaint at ¶11 and Paragraph 2.02(a) of the Mortgage Broker Agreement.

B. THE ANGEL BURGOS LOAN

On or about April 27, 2006, Defendant submitted a final loan application on behalf of Angel T. Burgos (the "Burgos Application") to obtain a loan in the amount of $192,000 plus interest (the "Burgos Loan") from First Franklin. The Burgos Loan was to be secured by a property located at 4528 South Lamon Avenue, Chicago, Illinois (the "South Lamon Property"). Complaint at ¶12. The Burgos Application stated that Burgos owned and occupied property located at 1904 Kedvale, Chicago that he would rent to a third party and that he would occupy the South Lamon Property as his primary residence for one year. Complaint at ¶13. The Burgos Application also stated that Burgos worked in the Auditing Department at Sam's Club and earned $6,100 per month. Complaint at ¶14. First Franklin funded the Burgos Loan on or about April 26, 2006 in the amount of $192,000 based upon Defendant's representations that the Burgos Loan was of suitable investment quality and did not contain any false or erroneous representations. Complaint at ¶15. After funding the Burgos Loan, First Franklin sold the Burgos Loan to a secondary market investor.

Burgos filed bankruptcy on January 24, 2007. In pleadings filed in the bankruptcy proceeding, Burgos stated that he resided at 1904 Kedvale and that he had not resided at any other address in the prior three years. Burgos' bankruptcy pleadings identified the South Lamon Property as a rental property. Complaint at ¶16. Burgos' bankruptcy pleadings also indicated that he was employed at Sam's Club for three years as "audit" and that he earned $1,649.95 per month. Burgos' bankruptcy pleadings also stated that he earned $1,551 per month during 2006 and annual income of $18,261 for 2005 ($1,522 per month). Complaint at ¶17.

As a result of the misrepresentations in the Burgos Application, First Franklin's secondary market investor required First Franklin to repurchase the Burgos Loan, which it did.

Complaint at ¶18. After repurchasing the Burgos Loan, First Franklin was able to mitigate part of its damages by reselling the loan. Complaint at ¶19. Despite its efforts to mitigate its damages, First Franklin incurred an actual loss of $88,233.27. *Id.* Pursuant to the terms of the Mortgage Broker Agreement, First Franklin requested that Defendant indemnify First Franklin for its actual loss of $88,233.27 and Defendant refused. Complaint at ¶20.

C. THE BOZIDAR KELIC LOAN

On or about March 9, 2006, First Franklin funded two loans in the principal amounts of $904,000 and $226,000 respectively, which named Bozidar Kelic ("Kelic") as the borrower, with said loans (the "Kelic Loans") secured against property located at 3134 Gordon Lane, Lemont, Illinois (the "Gordon Lane Property"). Complaint at ¶22. Defendant submitted a loan application to First Franklin for the Kelic Loans (the "Kelic Application") which listed Kelic's employer as a company whose existence First Franklin can not verify, which contained false income information, and in which Kelic declared that he would occupy the Gordon Lane Property within sixty days of funding and would continue occupying the Gordon Lane Property for one year. Complaint at ¶23. First Franklin subsequently determined that the Lemont Property was vacant. *Id.*

After funding the Kelic Loans, First Franklin sold the loans to a secondary market investor. As a result of the misrepresentations in the Kelic Application, First Franklin's secondary market investor required First Franklin to repurchase the Kelic Loans, which it did. Complaint at ¶24. After repurchasing the Kelic Loans, First Franklin was able to mitigate part of its damages by selling the Gordon Lane Property in a foreclosure sale. Complaint at ¶25. Despite its efforts to mitigate its damages, First Franklin incurred an actual loss of $200,127.52 with respect to the Kelic Loan. *Id.* Pursuant to the terms of the Mortgage Broker Agreement,

First Franklin requested that Defendant indemnify First Franklin for its actual loss of $200,127.52. Complaint at ¶26. Defendant refused to indemnify First Franklin for this loss. *Id.*

D. THE LITIGATION

On February 21, 2008, First Franklin filed the instant Complaint. In the Complaint, First Franklin alleges that Defendant breached the terms of the Mortgage Broker Agreement when, among other things: (i) Defendant submitted the Burgos Application and the Kelic Application to First Franklin, both of which contained false and inaccurate information regarding Burgos' and Kelic's creditworthiness and (ii) Defendant refused to indemnify First Franklin for the actual losses of $288,360.79 that First Franklin incurred as a result of Defendant's breaches of the representations and warranties under the Mortgage Broker Agreement. First Franklin also requested that Defendant indemnify First Franklin for its actual losses in an amount not less than $288,360.79, plus attorney fees, additional interest, and costs as required by Paragraph 2.02(a) of the Mortgage Broker Agreement. On or about April 25, 2008, Defendant filed an answer and affirmative defenses to the Complaint. On or about April 25, 2008, Defendant also filed the Motion requesting dismissal of the indemnification count of the Complaint.

III. ARGUMENT

A. STANDARD OF REVIEW. - - FED.R.CIV.P. 12(b)(6).

Dismissal of a complaint for failure to state a claim upon which relief may be granted is authorized by Fed.R.Civ.P. 12(b)(6). "Federal Rule of Civil Procedure 8(a)(2) requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests,'" *Bell Atlantic Corp. v. Twombly*, __ U.S. ___. 127 S.Ct. 1955, 1964 (2007), *citing Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed. 2d 80 (1957). "Factual allegations must be enough to raise

a right to relief above the speculative level ... '[T]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action', on the assumption that all the allegations in the complaint are true (even if doubtful in fact). *Id.* at 1965, *internal citations omitted.* As the Seventh Circuit Court of Appeals noted in *Limestone Development Corp. v. Village of Lemont, Illinois, et al.*, 2008 U.S. App. LEXIS 6981 (April 1, 2008), "*Bell Atlantic* must not be overread. The Court denied 'requir[ing] heightened fact pleading of specifics,' ... 'a complaint. .. does not need detailed factual allegations.' Within weeks after deciding *Bell Atlantic*, the Court reversed a Tenth Circuit decision for requiring fact pleading.'" *Limestone* at *14, *citing Erickson v. Pardus*, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam). "A complaint must always, however, allege "enough facts to state a claim to relief that is plausible on its face," *Id., citing Bell Atlantic, supra*, 127 S. Ct. at 1974, "and how many facts are enough will depend on the type of case." *Limestone* at *15. In reviewing a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the Court "accept[s] as true all the plaintiff's well-pleaded factual allegations, as well as all inferences reasonably drawn from them." *Pickerel v. City of Springfield*, 45 F.3d 1115, 1117 (7th Cir. 1995), *citing Gibson v. City of Chicago, 910 F.2d 1510, 1520-21 (7th Cir. 1990).* In deciding a motion under Fed.R.Civ.P. 12(b)(6), the court must not consider matters outside of the pleadings. *See Travel All Over the World, Inc. v. Kingdom of Saudi Arabia,* 73 F.3d 1423, 1430 (7th Cir. 1996), *internal citations omitted,* ("[I]f the district court considers matters outside the pleadings in connection with a motion to dismiss, it must treat the motion as one for summary judgment.")

B. THE MORTGAGE BROKER AGREEMENT IS VALID AND BINDING.

Defendant's Motion suggests that the Complaint fails to state a claim for contractual indemnity and must be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) because the Mortgage

Broker Agreement was allegedly not signed by First Franklin. In support of its Motion, Defendant attaches its copy of the Mortgage Broker Agreement which was unsigned by First Franklin. First Franklin has attached a fully executed copy of the Mortgage Broker Agreement to this Response (see Exhibit 1). Defendant's sole contention that the Mortgage Broker Agreement does not give rise to First Franklin's indemnification claim because it was unsigned is, therefore, factually inaccurate. As a result, the Motion must be denied because the Complaint clearly alleges sufficient facts to state a claim for contractual indemnification that is plausible on its face.

### C. DEFENDANT'S MOTION TO DISMISS MUST BE DENIED BECAUSE THE COMPLAINT STATES A CLAIM FOR CONTRACTUAL INDEMNIFICATION.

Although postured as a motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6), Defendant's Motion actually seeks a summary determination that the indemnity language of Paragraph 2.02(a) of the Mortgage Broker Agreement is "inapplicable to the present case" because "[t]he losses alleged in Plaintiff's Complaint are not based on claims alleged **against** First Franklin." Motion at p. 5, *emphasis in original*. Contrary to Defendant's allegations, First Franklin seeks indemnification from Defendant for the losses it incurred when its third-party secondary market investor demanded and required that First Franklin repurchase the Burgos and Kelic Loans. Complaint at ¶¶18 and 24. Thus, the Motion is properly characterized as one for summary judgment under Fed.R.Civ.P. 56 and should be denied unless this Court determines that no genuine issue of material fact exists and that Defendant is entitled to judgment as a matter of law. Under either standard, the Motion must fail.

In Illinois, "[a]n indemnity agreement is to be construed as any other contract, and under the rules of contract construction, the intention of the parties is the paramount concern. … When construing an agreement to indemnify, the agreement must be given a fair and reasonable

interpretation based upon a consideration of all the language and provisions. ... The interpretation of an indemnity agreement also depends upon the factual setting of the case. *Charter Bank v. Eckert,* 223 Ill.App.3d 918, 925 (Ill. App. Ct. 5th Dist. 1992), *internal citations omitted.*

The indemnification provision at issue in this action provides in relevant part:

> Broker shall indemnify, defend, and hold harmless First Franklin, ..., from and against any and against all damage, loss, liability, cost, actions, causes of action, claims, demands, or expense both direct and indirect (including without limitation reasonable legal and accounting fees and expenses actually incurred) **by whomsoever asserted** ...; which may arise or be incurred as a result of any action or inaction by Broker, including, but not limited to, a breach of any covenant, condition, representation or warranty arising under this Agreement, except as such damage, loss, liability, cost, action, cause of action, claim, demand, or expense is caused solely by the negligence or willful misconduct of First Franklin.

Exhibit A at Paragraph 2.02(a), *emphasis added.* Under the terms of the Mortgage Broker Agreement, Defendant represented and warranted to First Franklin that as of the date a Loan is closed and funded by First Franklin, all information relating to Borrower's creditworthiness and collateral submitted in connection with an application for a Loan is true, accurate, and complete. Complaint at ¶8 and Paragraph 3.01(b) of the Mortgage Broker Agreement. Defendant further agreed to investigate the accuracy and completeness of the Borrower's information and analyzing the Borrower's income. Complaint at ¶9 and Schedule A to the Mortgage Broker Agreement. Under the plain language of Paragraph 2.02(a) of the Mortgage Broker Agreement, Defendant must indemnify First Franklin against any claim, by whomsoever asserted, and for all losses First Franklin incurs as a result of any claim arising out of Defendant's breaches of the representations and warranties in the Mortgage Broker Agreement.

Although broad enough to encompass losses alleged by First Franklin, alone, the Complaint presents the precise situation that Defendant alleges the indemnification provision is

designed to protect First Franklin from: Where Defendant's breaches of the Mortgage Broker Agreement caused First Franklin to incur losses as a result of the claims asserted against it by a third party; namely when First Franklin's secondary market investor demanded that First Franklin repurchase both the Burgos and Kelic Loans. When considering First Franklin's well-plead allegations as true, the Complaint states a claim for contractual indemnification against Defendant, and Defendant's Motion must be denied.

Further, a genuine question of material fact exists as to the origin of the losses upon which the Complaint is based and Defendant's Motion must be denied as a matter of law. Defendant submits that First Franklin seeks indemnification for market losses sustained when First Franklin was unable to recoup the full amounts of the Burgos and Kelic Loans. First Franklin, however, actually seeks indemnification for the damages it incurred because of the claim its secondary market investor made against First Franklin after First Franklin had taken steps to mitigate those damages. No where in the Mortgage Broker Agreement is there a requirement that a "third party" actually file a lawsuit. Indeed, the language of Paragraph 2.02 includes losses sustained by "whomever asserted" and does not require a third party. Defendant is attempting to read a requirement in the agreement that is simply not present. But, even if such a requirement were present, First Franklin has properly pleaded that the claims were made by a third party against First Franklin, and, therefore, even under Defendant's reading of the agreement, they are properly governed by the indemnification provision of Paragraph 2.02(a) of the Mortgage Broker Agreement. Summary judgment dismissing First Franklin's request for indemnification must be denied, where, as here, a question of fact exists about the basis of the claim and the appropriate interpretation of the contract.

## III. CONCLUSION

Defendant breached the terms of the Mortgage Broker Agreement when it submitted the Burgos and Kelic Applications containing false information about Burgos' and Kelic's income and employment to First Franklin. First Franklin incurred damages when its secondary market investor demanded and required that First Franklin repurchase the Burgos and Kelic Loans as a result of Defendant's breaches of its representations and warranties under the Mortgage Broker Agreement. The Complaint properly and adequately pleads these facts and places Defendant on notice of the breach of contract and indemnification claims First Franklin asserts against it. Defendant's Motion pursuant to Fed.R.Civ.P. 12(b)(6) must fail as a result.

Respectfully submitted,

First Franklin Financial Corporation

By: s/Wm. Kent Carter
One of its Attorneys

W. Kent Carter
wcarter@clarkhill.com
Adam Toosley
atoosley@clarkhill.com
Clark Hill
150 N. Michigan Ave, Suite 2400
Chicago, IL 60601
(312) 985 -5900

William G. Asimakis (P46155)
wasimakis@clarkhill.com
Shannon L. Deeby (P60242)
sdeeby@clarkhill.com
500 Woodward Avenue, Suite 3500
Detroit, MI 48226-3435
(313) 965-8880