UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FIRST FRANKLIN FINANCIAL CORPORATION, a Delaware corporation,<br><br>    Plaintiff,<br>v.<br><br>AMERIHOME MORTGAGE COMPANY, L.L.C., A Wisconsin limited liability company,<br><br>    Defendant. | Case No. 08 C 1089<br><br>Hon. Charles P. Kocoras |

**<u>DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS</u>**

Defendant, AMERIHOME MORTGAGE COMPANY, L.L.C. ("AMERIHOME"), by its attorneys, LEWIS BRISBOIS BISGAARD & SMITH, LLP, for its Reply in support of its Motion to Dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted, states as follows:

Plaintiff, a wholesale mortgage lender specializing in non-conforming, sub-prime loans, apparently takes the position that, by signing a mortgage broker agreement, the broker guaranteed the performance of the loans underwritten, funded, and re-sold by the lender, First Franklin. If this were a reasonable interpretation of the agreement, surely no broker, for its modest commission, would be willing to present prospective borrowers' applications to this lender.

It is true that in order to do business with First Franklin, defendant was required to sign an adhesion contract drafted by First Franklin and intended by First Franklin to be interpreted in its favor. However, even the subject agreement, offered to defendant broker on a take-it-or-leave-it basis, does not require indemnity for non-performing loans. First Franklin asserts that

the indemnity provision contained in the broker agreement should be broadly construed to reimburse First Franklin for its own contractual requirement with its secondary market investors that it re-purchase non performing loans. The indemnity agreement cannot be read this broadly.

Although plaintiff spends much time in its response elaborating on pleading standards, it cites but one case, *Charter Bank v. Eckert,* 223 Ill.App.3d 918, 585 N.E.2d 1304 (5th Dist. 1992), to support its argument that the indemnity provision in the broker agreement supports First Franklin's claimed intention that it would be indemnified by the broker for losses caused by defaulting loans. However, the *Charter Bank* case does not support plaintiff's contention. *Charter Bank* concerned an indemnity provision in a partnership contract between two parties (Cook and Stiles) who formed a partnership in order to own, manage and lease a piece of property. Initially, Cook purchased the property and agreed to assume the prior owner's mortgage obligation. Immediately following the purchase by Cook, the property was conveyed to the Cook/Stiles partnership, although the partnership did not assume the personal obligation of Cook on the mortgage. *Id.*

At a later time, Stiles bought out Cook's interest in the partnership, and Stiles agreed to indemnify Cook for any liability incurred by Cook as a result of Stiles' subsequent actions or inactions involving the property. *Id.* Thereafter, Stiles defaulted on the mortgage payments and the bank foreclosed against the prior owner and against Cook and Stiles. Cook asserted that Stiles was required to indemnify him for his obligation on the mortgage pursuant to the indemnification agreement in the buyout agreement. *Id.* The Court disagreed and refused to interpret the indemnity provision, which was written broadly and nonspecifically, to reach the obligations on the mortgage. The court did cite *Plepel v. Nied* for the comment that an indemnity agreement is to be construed as any other contract, with the intentions of the parties as

the primary concern. *Id.* (citing *Plepel,* 106 Ill.App.3d 282 (1st Dist.1982)). However, the court in *Charter Bank* also acknowledged that although indemnity agreements are not void, they nevertheless are not favored and must be strictly construed. *Id.* (citing *Bates v. Select Lake City Theater Operating Co.*, 78 Ill. App. 3d 153 (1st Dist. 1979)). Clearly, Illinois law requires a heightened scrutiny to be given to indemnity agreements, which are disfavored and require strict construction. *Humphrey v. E. Mfg.*, 2003 U.S. Dist. LEXIS 22845, 3-4 (N.D. Ill. 2003) (citing *Karsner v. Lechters Illinois, Inc.*, 331 Ill. App. 3d 474, 476, 771 N.E. 2d 606, 608 (2002)); *Central Die Casting & Mfg. Co. v. Tokheim Corp.*, 1995 U.S. Dist. LEXIS 17519 (N.D. Ill. 1995) (*citing Charter Bank*, 223 Ill. App. 3d 918).

Therefore, before enforcing an indemnity agreement, the court must analyze the clear language and the intention of the parties to the agreement. *Humphrey*, 2003 U.S. Dist. LEXIS 22845 at *3 (citing *Karsner*, 331 Ill. App. 3d at 476). In the instant case, the language of the indemnification clause requires indemnification only in circumstances where First Franklin has sustained a loss caused by the claim of a third party **against** First Franklin, based on the action or inaction of the broker. Although, as in *Charter Bank,* the subject clause is written broadly, it specifically focuses on two particular kinds of claims that were obviously of utmost concern to First Franklin, the drafter of the agreement. Those claims are "claims of: 1) the Borrower arising directly or indirectly out of the transaction which is the subject matter of this Agreement; and 2) and person or persons who prosecute or defend any actions or proceedings as representatives of or on behalf of any class or interest group . . . . " *See Defendant's Motion to Dismiss, Exhibit A, p. 4, section 2.02*.

From the language of the indemnity agreement, it can be presumed that First Franklin was concerned about suits brought against it by borrowers and other class action plaintiffs. If

First Franklin intended the broker to become responsible for non-performing loans, that would have been specifically stated (and likely not agreed to by any mortgage broker). It was not. Given even general contract construction principles, the indemnity agreement fails to apply. Further, adding the requirement of strict construction and the general disfavor of such clauses, this indemnity agreement simply cannot, as a matter of law, be stretched to pass the risk of defaulting loans to the broker.

The purpose of the sub-prime mortgage industry is to give loans to people who do not have a credit rating high enough to qualify for a standard loan and often do not have sufficient cash for a down payment. Often, the lenders required little or no documentation from borrowers. These are high risk and potentially high benefit loans. The interest rates are high, as is the risk of non-performance. Lenders such as First Franklin actively solicited these kinds of borrowers, which brought them high profits through sale to investors in the secondary market. Although plaintiff's complaint fails to specify its contractual obligations with its secondary market investors who purchased the subject loans, the complaint indicates that First Franklin was contractually required to buy back non-performing loans. The issue was not a misrepresentation on the mortgage application – the issue was non-performance. Plaintiffs would have had no concern over misrepresentation if the loan payments were being made.

Plaintiff's tortured reading of the indemnity clause and the allegations in its complaint that the buy-back provision in its secondary market contracts constitute "claims" against First Franklin in order to justify the imposition of indemnity by the broker, should not be accepted by this Court. That interpretation is belied by the wording of the clause itself, and the court should not, especially under the strict construction requirements of indemnity provisions, consider extension of the indemnity clause to pass the risk of non-performing loans to the mortgage

broker.  Such an interpretation would allow the lender to obtain huge profits through secondary market sales, and yet not bear any risk for non-performing loans, forcing brokers to assume those mortgage obligations.  This is not how the provision is written.  It was certainly not the intention of defendant to become a loan guarantor, and if it was First Franklin's intention, it was not so stated, and cannot be enforced.  Therefore, plaintiff's indemnity claim against defendant should be dismissed.

WHEREFORE, Defendant, AMERIHOME MORTGAGE COMPANY, L.L.C., prays this Court dismiss Plaintiff's Amended Complaint for the reasons stated above pursuant to Rule 12(b)(6).

> Respectfully submitted,
>
> AMERIHOME MORTGAGE COMPANY, L.L.C.
>
> By:     s/ Linda E. Unger
> One of Its Attorneys

Linda E. Unger – ARDC No. 3125563
Siobhán M. Murphy – ARDC No. 6207431
Brooke M. Rotstein – ARDC No. 6282803
**LEWIS BRISBOIS BISGAARD & SMITH LLP**
550 West Adams Street, Suite 300
Chicago, Illinois  60661
Phone: 312-345-1718
Fax: 312-345-1778